# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

**UNITED STATES OF AMERICA**

v.

**DARIUS CALDWELL,**

    **Defendant.**

CRIMINAL ACTION FILE

NO. 1:16-CR-355-MHC-JSA

## ORDER

On October 4, 2016, a four-count indictment was returned against Defendant, which included charges relating to an armed bank robbery he purportedly committed at a Bank of America branch in Smyrna, Georgia, on September 7, 2016. Criminal Indictment [Doc. 10]. This action comes before the Court on the Final Report and Recommendation ("R&R") of Magistrate Judge Justin S. Anand [Doc. 60] recommending that Defendant's Motion to Suppress Evidence [Doc. 20], Motion to Suppress Identification Testimony [Doc. 34], and Motion to Suppress Statements [Doc. 19] be denied. The Order for Service of the R&R [Doc. 61] provided notice that, in accordance with 28 U.S.C. § 636(b)(1) (2012), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. After obtaining an extension of time within which to file his objections, on November 2, 2017, Defendant filed his objections to only those

portions of the R&R which recommend the denial of his Motion to Suppress Identification Testimony and Motion to Suppress Statements [Doc. 78] ("Def.'s Objs.").

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate [judge]'s report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]," 28 U.S.C. § 636(b)(1), and may accept the or recommendation if it is not clearly erroneous of contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendant

objects and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## I. MOTION TO SUPPRESS IDENTIFICATION TESTIMONY

Defendant objects to the Magistrate Judge's finding that the single-person show-up was not unduly suggestive or unreasonable, arguing that it was unduly suggestive and unreasonable. Def.'s Objs. at 2. Defendant also claims that the show-up was unnecessary because the police already had probable cause to arrest Defendant prior to the show-up. Id.

The evidence presented at the evidentiary hearing held over three days before the Magistrate Judge showed that: (1) on September 7, 2016, the police received a report that an African American male wearing blue jeans, a black shirt, black shoes, dreadlocks, and a blue bandana on his face was carrying a bag and hiding in the bushes outside a bank in Smyrna, Georgia; (2) shortly thereafter, a man generally matching this same description robbed the nearby Bank of America branch in Smyrna at approximately 10:07 a.m; (3) the bank teller at the bank who interacted with the robber later described the robber as an African American male, approximately five feet, nine inches tall with a slight to medium build, wearing a blue bandana over his face and something on his head, and carrying a black bag and handgun; (4) witnesses in the bank parking lot informed the police that they

3

observed the individual who robbed the bank running from the bank and directed the police pursuit in the same direction; (5) one of the residents in the nearby neighborhood where the police were searching told the police that a suspicious person was hiding in his backyard; (6) Defendant was found hiding behind that resident's house (approximately one quarter of a mile from the bank) and placed in handcuffs approximately ten minutes after the robbery; (7) a bag containing the GPS tracking device placed in the bag by the bank teller during the robbery was found ten minutes later about five feet from where Defendant was hiding; and (8) inside the bag was the GPS tracker, the stolen money, a wig with dreadlocks, a blue bandana, and a firearm that matched the description of the one used by the robber. R&R at 2-5.

Specifically with regard to the "show-up" which Defendant is challenging, the evidence presented at the evidentiary hearing showed that: (1) a detective went to the bank at 10:30 a.m. and inquired of the victim teller whether she thought she could identify the robber; (2) the teller responded affirmatively and the two traveled in the detective's vehicle to the location where Defendant was being detained approximately one quarter mile from the bank; (3) en route to the show-up, the teller expressed doubt that she would be able to identify the robber because he was wearing a bandana at the time of the robbery; (4) in response, the detective

told the teller "well what I try to do to remember an occurrence, I think of the thing I was doing just prior to the occurrence," and then assured the teller that it "was fine" if she was unable to identify the robber and that the police only expected her to do what she could; (5) as the detective and teller arrived at the scene where Defendant was detained in the back of a police car, Defendant was removed with his hands cuffed behind his back; (6) the teller immediately upon seeing Defendant stated "yes, that's him"; and (7) when asked to explain the basis of her positive identification, the teller stated that the Defendant matched her recollection of the robber in terms of his height, build, and skin tone and mentioned that the Defendant wore the same distinctive t-shirt (a reversible Pittsburgh Steelers shirt). Id. at 7-8.

In order to succeed on his motion to suppress the identification evidence produced as a result of this show-up, Defendant must show that (1) the law enforcement's identification procedure was unduly suggestive and (2) that the identification under the totality of circumstances was not reliable. Blanco v. Singletary, 943 F.2d 1477, 1508 (11th Cir. 1991) (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)). "Factors considered in determining reliability include 'the opportunity to view the witness at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of

certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.'" Johnson v. Dugger, 817 F.2d 726, 729 (11th Cir. 1987) (quoting Biggers, 409 U.S. at 199).

Defendant argues that the show-up at issue here was unduly suggestive because the teller identified Defendant after he was removed from a police car while Defendant's hands were cuffed and while he was surrounded by policemen and police cars. Def.'s Objs. at 3. Defendant does not cite to any controlling case in which a show-up under similar circumstances has been found to be unduly suggestive. In fact, in the case cited by Defendant for the proposition that an unduly suggestive show-up is "one engineered by the police and made to suggest to the witness that the person to be viewed is a suspect," the court found that the show-up was not unduly suggestive. See id. at 4 (citing Key v. McNeil, 4:08CV379-WS WCS, 2010 WL 5811481, at *6 (N.D. Fla. Dec. 27, 2010), R&R adopted, No.4:08CV379-WS/WCS, 2011 WL 587353 (N.D. Fla. Feb. 10, 2011) (finding the "the police did nothing to suggest that Petitioner was a suspect.")). The cases cited by Defendant involving single photograph identifications are inapposite. Id. at 4.

The R&R cites an Eleventh Circuit case involving accused bank robbers who were identified by eyewitnesses to a robbery shortly after it occurred. See

Dugger, 817 F.2d at 729. In Dugger, the eyewitness was driven in a patrol car to where the suspects were being detained in the back of a police car. Id. The court denied the motion to suppress the positive identification of the robbers, holding that the circumstances surrounding it were not unduly suggestive because the "police . . . did not aggravate the suggestiveness and thus the confrontation was not impermissible." Id.

The Court finds that Judge Anand's conclusion in this case (based on facts similar to those presented in Dugger), that the show-up was not unduly suggestive is supported by the record. Moreover, the Court agrees with Judge Anand's conclusion that if the Court were to consider the second prong of the test—whether the identification under the totality of circumstances was reliable—the Court would conclude that the identification was reliable in this case. See R&R at 18 n.8. The teller viewed Defendant during the robbery, she accurately described the Defendant to police and that description was confirmed during the show-up, the show-up occurred soon after the robbery, and the teller provided a detailed explanation of her identification based on Defendant's height, build, skin tone, and the distinctive shirt he was wearing. Therefore, Defendant's objections to Judge Anand's rulings on his motion to suppress identification testimony are **OVERRULED.**

## II. MOTION TO SUPPRESS STATEMENTS

Defendant objects to Judge Anand's conclusion that Defendant's Motion to Suppress Statements should be denied, arguing that Judge Anand erroneously concluded that the government met its burden to demonstrate that the Defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Def.'s Objs. at 11-12 (citing Miranda v. Arizona, 384 U.S. 436, 475 (1966)).

As it relates to Defendant's Motion to Suppress Statements, the evidence presented at the evidentiary hearing showed that: (1) Defendant was transported to the City of Smyrna jail and police department at approximately 11:20 a.m. on September 7, 2016; (2) Defendant invoked his right to be silent to the City of Smyrna detectives; (3) two FBI special agents arrived at the City of Smyrna jail and police department at 12:00 p.m.; (4) upon arrival, the FBI special agents were informed by the City of Smyrna detectives that Defendant had requested a lawyer; (5) immediately upon encountering the FBI special agents at the City of Smyrna jail, Defendant again requested an attorney; (6) at 1:40 p.m., Defendant was transported by one of the FBI special agents from the City of Smyrna jail to the Atlanta police department for processing; (7) during the thirty-minute drive, the FBI special agent asked Defendant personal, family-related questions unrelated to

8

the case, which the agent described as "small-talk" and "rapport building"; (8) during the drive the special agent also generally explained to Defendant the booking process that was going to take place at the Atlanta Police Department and the initial appearance that was going to take place the next day; (9) Defendant did not make any inculpatory statements during the thirty-minute drive to the Atlanta police department; (10) Upon arrival at the Atlanta police department, the FBI agent and Defendant were rejoined by the second FBI agent and the FBI agents both then proceeded to ask Defendant a series of standard identification questions as a part of the booking process (e.g., name, date of birth, social security number, address, emergency contacts, etc.); and (11) Defendant never left the custody or presence of the special agent who engaged in the "rapport building" conversation. R&R at 8-10.

Defendant made the following inculpatory statements after his arrival at the Atlanta police department for the booking process which are the subject of Defendant's Motion to Suppress:

- "I don't see what the big deal is."
- "Nobody got hurt and they got the money back."
- "It wasn't worth 3,000 dollars."
- "I'm gonna be like this for ten year."

9

Motion to Suppress Statements at 2. The statements were made to the FBI special agents while Defendant was leaving the booking area with the agents after they had completed the booking process. Tr. of Evidentiary Hr'g dated Jan. 5, 2017 [Doc. 39] ("Tr. Vol.1") at 95, 106-07; R&R at 9. Defendant then said "I'm gonna be like this for ten years" to the FBI special agents as they were escorting Defendant in handcuffs and leg shackles away from the booking location on the way to the detention center. Tr. Vol. 1 at 94, 110; R&R at 10. Finally, as the FBI special agents escorted Defendant to the Atlanta city detention center, Defendant asked "[c]an I plea tomorrow? When can I take a plea?" Tr. Vol. 1 at 94-95, 111. None of the statements made by Defendant were made in direct response to any question from the special agents. Id. at 95.

It is undisputed that Defendant made the inculpatory statements at issue while in custody after Defendant had clearly expressed his desire for a lawyer. Because Defendant had not waived his Miranda rights, Defendant contends that the custodial statements were procured in violation of Miranda. The Government asserts that Defendant spontaneously uttered the statements and they were not the product of any interrogation by law enforcement. R&R at 20.

Even though the conversation between Defendant and the FBI special agent during the thirty-minute drive to the Atlanta police department did not relate

directly to the facts of Defendant's case and does not appear to have been accusatory or confrontational in nature, the conversation was initiated by the FBI special agent after Defendant had invoked his right to counsel and constituted an impermissible interrogation. See United States v. Johnson, 812 F.2d 1329, 1331 (11th Cir. 1986) (finding that it was a Miranda violation for an FBI agent to engage an accused in a conversation "explaining the process" after the accused had invoked his right to an attorney). Johnson involved a similar situation where a FBI agent engaged an accused in a similar fashion to explain the criminal justice process that was about to occur. Although it may sound harmless on its face, this line of questioning is impermissible after an accused invokes his right to counsel.

> While stating to an accused in custody that the criminal justice system will be explained sounds innocent enough, those familiar with the criminal arena are well aware of the fact that such an "explanation" is often designed to inform the accused that cooperation may be beneficial when a judicial officer considers such matters as bail. This type of helpfulness is often used to indicate to the accused that the law enforcement officers will "be good if the accused will be good," or infer "Why don't you be good and tell us about it?"
>
> No interest would be served by attempting to list matters that may or may not be discussed by law enforcement officers with an accused in custody after the accused has indicated that a lawyer is desired before further interrogation. It best serves all interests, especially law enforcement, to remain close to the "bright line": interrogation must cease when an accused in custody requests the presence of a lawyer before further interrogation.

> While a harmless error analysis may "save the day" in some cases where law enforcement officers are "merely being helpful," we discourage such a practice after an accused, in custody, requests the presence of a lawyer. In cases presenting this issue, we will begin our review with suspicion, mindful of the fact that the inculpatory statement may have resulted from what has become known as the "good guy routine."

Id. Judge Anand correctly reached the conclusion that the conversation initiated by the FBI agent while transporting Defendant to the booking at the Atlanta police department constituted an unlawful interrogation, see R&R at 23-24, and that if Defendant made any statement during this unlawful "rapport building" interrogation, it would be excluded.

However, Defendant's statements were not made during the unlawful "rapport building" interrogation, but instead were made later during the booking process which occurred immediately thereafter, without any apparent prompting from the special agents. The question then becomes whether Defendant's apparently spontaneous statements made after the unlawful "rapport building" interrogation constituted valid waivers of his right to counsel.

> If [an] interrogation continues [after an accused has indicated he wants an attorney] without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

12

Miranda, 384 U.S. at 436, 475 (1966). The Supreme Court has stated that once a defendant asserts his right to counsel,

> a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. . . . [A]n accused, . . . having expressed his desire to deal with police only through counsel is not subject to further interrogation by authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

Edwards v. Arizona, 451 U.S. 477, 484 (1981); see also United States v. Gomez, 927 F.2d 1530, 1539 (11th Cir. 1991) ("Only if the accused, after requesting counsel, voluntarily initiates further communication can the agents pursue more information and interrogation."). The Supreme Court has articulated a two-part inquiry to determine whether a waiver is made voluntarily, knowingly, and intelligently:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine, 475 U.S. 412, 421 (1986).

Judge Anand correctly ruled that a Miranda violation does not require the suppression of all future statements made by a defendant. R&R at 24; See also Oregon v. Elstad, 470 U.S. 298, 309 (1985) ("[T]he admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made."). A subsequent statement from Defendant in this case would not necessarily be suppressed if there was "break in the stream of events . . . sufficient to insulate" Defendant's inculpatory statements from the special agent's Miranda violation during the unlawful "rapport building" interrogation. R&R at 24 (quoting Clewis v. Texas, 386 U.S. 707, 710 (1967)); see also Oregon v. Elstad, 470 U.S. 298, 318 (1985) (holding that a suspect who has been subject to a Miranda violation is not disabled from waiving his rights and offering confession, but that "a passage of time or break in events" is required before the subsequent statement can be deemed voluntary). The Supreme Court has ruled that the trial court must assess the voluntariness of any statements made subsequent to a Miranda violation by determining, from the totality of the circumstances, whether the taint of the Miranda violation was dissipated sufficiently by intervening events. In doing this, the court must consider factors such as (1) the time that passes between the unlawful interrogation and the statement at issue, (2) any change in the location of the interrogations, and (3) any

14

change in the identity of the interrogators. Elstad, 470 U.S. at 310. Accordingly, not only must this court make a voluntariness determination, it must also determine whether the government met its burden of showing a sufficient "break in the stream of events" to insulate Defendant's statements from the taint of the preceding unlawful interrogation. Id. at 314. To make such a showing, the government must demonstrate that the subsequent confession "was an act independent of the [earlier unlawful interrogation]." Reck v. Pate, 367 U.S. 433, 444 (1961).

Although the Court finds that Judge Anand correctly stated the law in this matter, the Court disagrees with his conclusion after applying the law to the facts of this case. Upon consideration of the factors discussed in Elstad, the Court finds that the "break" between the "rapport building" interrogation and Defendant's statements was not sufficient such that this Court could properly conclude that Defendant voluntarily, knowingly, and intelligently waived his Miranda rights.

Temporally, there was no break in time between the unlawful "rapport building" interrogation and the booking process during which Defendant made the statements. It is undisputed that the unlawful "rapport building" interrogation took place in the thirty-minute drive to the Atlanta police department and that the booking process began immediately upon arrival. Compare Clewis v. Texas, 386

15

U.S. 707, at 710 ("[t]here is here no [sufficient] break in the stream of events from the time Sunday morning when [the defendant] was taken to the police station to the time Tuesday morning some nine days later that he signed the statement in issue, sufficient to insulate the statement from the effect of all that went before."). No time passed between these two events. There was no intervening period where Defendant was permitted to see counsel, family, or friends. There was no intervening judicial hearing.

The absence of any temporal break is compounded by the fact that the same special agent who engaged Defendant in the unlawful "rapport building" interrogation was the agent who booked Defendant and to whom Defendant made the statements. The undisputed evidence indicates that Defendant was in the continued and uninterrupted custody and presence of the same special agent who conducted the unlawful interrogation. Moreover, the subject of some of the unlawful "rapport building" interrogation involved the very booking process that was taking place immediately prior to Defendant making the statements at issue.

Although the booking area at the Atlanta police department was in a different location than the police car where the unlawful "rapport building" interrogation was conducted, the change in locale is a distinction without a difference. To Defendant, both places were dominated by the same law

16

perspective of the suspect."). The Court agrees with Judge Anand's assessment that the booking process was "significantly more formal and likely more intimidating and coercive than the car ride," and the Atlanta police station is "likely, a more menacing location." R&R at 25. Nevertheless, the move to the Atlanta police department from the vehicle does not constitute a sufficient break from the prior unlawful interrogation.

Viewing the totality of the circumstances, the Court is unable to conclude that there was a sufficient break in the events to vitiate a causal link between the unlawful "rapport building" interrogation immediately preceding Defendant's statements. Therefore, Defendant's objection to the Magistrate Judge's ruling on his motion to suppress statements is **SUSTAINED**.

### III.  CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Defendant objects, the Court **OVERRULES** his objections as they relate to his Motion to Suppress Identification Testimony and **SUSTAINS** his objections as they relate to his Motion to Suppress Statements. The Court finds no clear error in the portions of the R&R to which Defendant did not object.

It is hereby **ORDERED** that the Court **ADOPTS** the R&R as it relates to Defendant's Motion to Suppress Evidence and Defendant's Motion to Suppress

17

Identification Testimony, and **REJECTS** the R&R as it relates to Defendant's Motion to Suppress Statements.

It is further **ORDERED** that:

(1) Defendant's Motion to Suppress Evidence [Doc. 20] is **DENIED**;

(2) Defendant's Motion to Suppress Identification Testimony [Doc. 34] is **DENIED**; and

(3) Defendant's Motion to Suppress Statements [Doc. 19] is **GRANTED**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendant ready for trial on November 29, 2017, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant's objections to the R&R outweigh the right of the public and the right of the defendant to a speedy trial, pursuant to 18 U.S.C. § 3161, *et seq.*

**IT IS SO ORDERED** this 11th day of December, 2017.

_____
MARK H. COHEN
United States District Judge